# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                                        **REPORT AND**
          v.                            **RECOMMENDATION**
                                        **04-CR-6030**

NAVID ABBAS,

          Defendant.

_____

## Preliminary Statement

By Order of Judge David G. Larimer, dated March 11, 2004, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §636(b)(1)(A)-(B). (Docket #2). Before the Court is defendant Navid Abbas's motion to suppress verbal and written statements made to law enforcement on July 12, 2001. (Docket #8). The Government has filed papers in opposition to the motion. (Docket #10). A suppression hearing was held on January 4, 2005 and April 11, 2005. The following is my Report and Recommendation as to the defendant's suppression motion.

## Factual Background

Government proof: The testimony adduced at the suppression hearing revealed that on July 12, 2001, Special Agent Catherine Clark of the United States Department of State, Bureau of Diplomatic Security, interviewed Defendant Abbas regarding a fraudulent passport application she suspected that Abbas completed

and submitted to the Department of State. See Transcript of January 4, 2005 Suppression Hearing [hereinafter "T1"] at 3-4 (Docket #14). The interview was conducted in Scottsville, New York at a small convenience store where Abbas worked. (T1 at 4).

Agent Clark testified that she went to Abbas's place of employment with Special Agent Gordon Getz. Upon entering the store they identified themselves as federal agents and displayed their photo identification cards. (T1 at 5).[1] Both agents were in plain clothes and carrying concealed firearms. Agent Clark recalled entering the store and telling Abbas "that we have some questions about the passport application that [you] filled out, and we need to review the application with [you]." (T1 at 43).

According to Clark, the agents asked to speak to Abbas in a private area because "a lot of people are not comfortable talking to people like police in public." (T1 at 41). Clark recalled sitting with Abbas at a table in the store and questioning him about his passport application and the supporting documentation Abbas submitted to the State Department, including a birth certificate which listed his place of birth as Los Angeles, California. See Government's Exhibit 1; (T1 at 6-9). Clark stated that during the interrogation the agents "confronted" Abbas with the fact that they knew Abbas was born in Pakistan. Abbas admitted

---

[1]   Agent Clark noted that she has a badge beneath her photo identification, but she does not usually display it because it does not identify her as an agent.  (T1 at 29).

2

that he was not born in California and a friend with the same last name had given him the California birth certificate.  (T1 at 10).  Clark testified that Abbas seemed "slightly nervous," but did not "recall him demonstrating extreme anxiety" during the interview.  (T1 at 50).

According to Agent Clark, after the interview was completed, Abbas was asked to complete a written statement on an official State Department statement form.  See Government's Exhibit 2; (T1 at 11).  The substance of the written statement was completed by Abbas in his own writing.  Nevertheless, Clark admitted that the agents "aided" Abbas in formulating a portion of the statement.  However, Clark insisted that the inculpatory portions of the statement were in the defendant's own words.  (T1 at 59-60).  See Government Exhibit #2.  Agent Clark testified that Abbas did not demonstrate any difficulty understanding English.  (T1 at 15).[2]

Agent Clark testified that she considered this to be a "non-custodial" interview and that she could not recall whether she gave Abbas any Miranda warnings.  (T1 at 14, 19).[3]  Clark testified that the store remained open and there were customers coming in and

---

[2]   Before interviewing Abbas at the convenient store, Agent Clark spoke with his supervisor at Monroe Community College (MCC), where Abbas also held a part-time job.  The supervisor told Clark that Abbas did not understand English very well.  (T1 at 34).

[3]   Based on this testimony, the Court advised counsel that "[f]or purposes of this decision, I'm going to assume that the warnings were not read."  (T1 at 28).

out during the interview.  (T1 at 18).  Abbas was not handcuffed
during the interview.  (T1 at 18).  Agent Clark also testified that
after the interview and written statement had been obtained she
took Abbas' fingerprints.  Clark could not recall what she or Getz
told Abbas before taking his prints.  (T1 at 39-40).  After the
fingerprinting was completed, Clark told Abbas that they may
contact him in the future and left the convenience store.

Defense Proof:  Defendant Abbas testified in his own defense
at the suppression hearing.  He testified that he was born in
Pakistan and came to Rochester in 1998.  See Transcript of April
11, 2005 Suppression Hearing [hereinafter "T2"] at 3-5 (Docket
#15).  He married and became a student at MCC, where he worked
part-time, in addition to working at the convenience store.  (T2 at
9-11).

Abbas's testimony as to the nature and sequence of his
interaction with the agents on July 12, 2001 differed in
significant respects from Agent Clark.  He testified that the two
federal agents came into the store unannounced and immediately
showed him their badges.  They told Abbas they wanted to talk to
him. (T2 at 11-12).  Abbas testified that he called his supervisor
and asked him to work the cash register while he talked to the
agents.  (T2 at 13).

Abbas stated that the agents immediately confronted him with
his passport application.  Agent Getz told Abbas: "Get ready to go

4

to Lahore," (an airport in Pakistan) and "you're going to jail tonight." (T2 at 14-16).[4] Abbas testified that these statements scared him. According to Abbas, he was directed to a table in the corner of the store and Agent Getz placed a pair of handcuffs on the table. Getz then asked Abbas for his fingerprints which Abbas gave to Agent Clark. (T2 at 16). After the fingerprinting process was complete, Abbas asked the agents if he could wash his hands. According to Abbas, as he rose, Agent Getz immediately stood up from the table and blocked the door leading outside the store. When Abbas was done cleaning his hands, he returned to the table and Agents Getz and Clark began to ask him questions. (T2 at 17).

According to Abbas, the agents questioned him about his passport application, but they never advised him that he had the right to remain silent. (T2 at 17). Instead, Abbas testified that Agent Getz told him what to write down on a piece of paper and Abbas complied. (T2 at 18, 37, 40). Abbas testified that he did what he was told because in Pakistan when the governmental agents ask questions, "if you don't answer, they beat and torture and sometimes they torture a lot." (T2 at 18). According to Abbas, he did not know that he could refuse to write the statement and the only reason he responded to their questions was because he "thought

---

[4] Agent Clark did not recall anyone making these statements to Abbas or putting handcuffs on the table but could not definitively deny it, stating, "[i]t's not something that sounds like it would happen during the course of that type of [sic] interview." (T1 at 42-44).

if I don't answer them, they will beat me up and they will torture me."  (T2 at 19).

## Discussion

1.  The Legal Standard for Custody:  Abbas moves to suppress his verbal and written statements, claiming, *inter alia*, that they were the result of an interrogation made without benefit of Miranda warnings.  Miranda warnings, of course, "are not required unless law enforcement agents interrogate a person who is in custody." United States v. Kirsh, 54 F.3d 1062, 1067 (2d Cir. 1995).  The issue presented here then is whether Abbas was subjected to custodial interrogation when questioned by Agents Clark and Getz on July 12, 2001.

For purposes of Miranda, a person is "in custody" when he is either formally arrested or his freedom of movement is constrained to a degree equivalent to a formal arrest.  Thus, even without an actual arrest, a person is in custody and entitled to Miranda warnings "if a reasonable person in the suspect's shoes would not have felt free to leave under the circumstances." United States v. Badmus, 325 F.3d 133, 138 (2d Cir. 2003)(internal quotations and citation omitted).

Determining whether an individual is "in custody" is a two-part inquiry.  First, the court must consider the circumstances surrounding the interrogation.  Second, given those circumstances,

the court must decide whether a reasonable person would have felt that he "was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995).   Where there has been no formal arrest, the relevant judicial inquiry is whether the "law enforcement officials act or speak in a manner that conveys the message that they would not permit the accused to leave."   United States v. Ali, 86 F.3d 275, 276 (2d Cir. 1996)(internal quotation and citation omitted).   In determining whether Miranda applies, the court must look at the totality of all the circumstances involved in the interrogation, including whether the suspect is advised of his right to leave, the location and atmosphere of the questioning, the language and tone used by the agents, whether the suspect is patted down, searched or frisked and the length of the interrogation.   Tankleff v. Senkowski, 135 F.3d 235, 244 (2d Cir. 1998).

2.  Was Abbas In Custody for Miranda Purposes?: As the Supreme Court has recognized, "the task of defining 'custody' is a slippery one." Oregon v. Elsted, 470 U.S. 298, 309 (1985).   It is a task that is necessarily fact specific and often influenced by the nature and extent of proof offered at the suppression hearing and the court's credibility determinations regarding the testimony considered.   For purposes of this hearing, I assume that the defendant has the burden of demonstrating that he was subjected to custodial interrogation. See United States v. Jorgensen, 871 F.2d

7

725, 729 (8th Cir. 1989) (defendant has burden to establish that he was subject to custodial interrogation); United States v. Davis, 792 F.2d 1299, 1309 (5th Cir. 1986)(defendant has burden to establish that he was under arrest or in custody); United States v. Charles, 738 F.2d 686, 691-92 (5th Cir. 1984)(defendant has burden to establish that statement was elicited through custodial interrogation).

Based on the totality of circumstances I find that the defendant has sustained his burden of proof here. First, it is undisputed that Abbas was never informed by the agents during the interview that the questioning was voluntary, that he was free to leave or that he was not being placed under arrest. While the advisement of such rights is not <u>required</u> for a finding of non-custodial questioning, it is certainly one of the most persuasive pieces of evidence in determining custody, primarily because it is so direct and easy to accomplish. "The most obvious and effective means of demonstrating that a suspect has not been taken into custody or otherwise deprived of ·freedom of action is for the police to inform the suspect that an arrest is not being made and that the suspect may terminate the interview at will." United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)(internal citation and quotation omitted). See United States v. Newton, 369 F.3d 659, 676 (2d Cir.) (informing subject that he is not under arrest and is free to leave "is a fact that may be considered in

assessing the extent to which a reasonable person would understand any restraints on his freedom to be comparable to those associated with a formal arrest"), cert. denied, __ U.S. __, 125 S.Ct. 371 (2004); United States v. Salvo, 133 F.3d 943, 951 (6th Cir. 1998) (statement to suspect that he was not under arrest, was free to leave at any time, and would not be arrested at the end of the interview was "an important factor in finding that the suspect was not in custody").

Second, I find that there were events during the questioning which would suggest to a reasonable person in Abbas's situation that his freedom of movement was being restricted in a significant way. The questioning was initiated by the agents who arrived unannounced at Abbas's place of work. He was shown official badges and/or identification cards by the agents and asked to go to a private area of the store. While it may be true that Abbas was allowed to briefly assist on a customer during the 30-60 minute interrogation, I also credit Abbas's testimony that Agent Getz stood and blocked the door to the outside of the store when Abbas went to wash his hands, an action that would reasonably suggest to someone being interrogated that their freedom of movement was being restrained or restricted in a way akin to a formal arrest.

Third, I find that the tone and environment of the interview supports a finding of custody. This was not a situation where Abbas was initiating or acquiescing to the interview. Agent Clark

testified that early in the interview "we would have confronted him" with the fact that they knew Abbas had lied on his passport application and told Abbas that "we need you to verify" the false information. (T1 at 49). Clark testified that she could not recall Abbas asking a single question during the interview (T1 at 18), which suggests to me that the agents controlled, if not dominated the encounter. While the fact that the interview took place in the defendant's workplace and not a police station is relevant, is it also relevant that the agents sought and obtained Abbas's fingerprints, a procedure a suspect would reasonably associate with arrest and criminal booking procedures.   See Orozco v. Texas, 394 U.S. 324, 326-27 (1969) (Miranda warnings may be required to be given to defendant interrogated in familiar surroundings that do not necessarily present the compulsive pressures of a police station).

Finally, the behavior exhibited by and statements made by the agents during their encounter with Abbas weighs in favor of finding custody.   I credit Abbas's testimony that (1) although plain clothed, Agent Getz removed his handcuffs and placed them on the table in front of Abbas; (2) Getz told Abbas at the beginning of the interrogation to "get ready" to go to Lahore (an international airport in Pakistan); and (3) that Getz told Abbas he was going to jail.   I believe these things were done to encourage Abbas to cooperate with the agents' investigation and make admissions about

his passport application.  In crediting Abbas's testimony I note
that Agent Clark's recollection of the events of July 12, 2001 were
less than certain in many respects.  In fairness, Agent Getz was
the lead case agent and, indeed, Agent Clark had only been a
Special Agent for two months at the time of the interview.
Nevertheless, Clark testified that she would "typically" take notes
during an interview of this nature, but could find no notes in
Abbas's file. (T1 at 44-46).  Agent Clark could not definitively
remember whether Agent Getz advised Abbas of his <u>Miranda</u> rights (T1
at 28), could not definitively recall whether Getz put handcuffs on
the table (T1 at 43), could not recall the specific questions put
to Abbas (T1 at 45), and could not remember with certainty the
procedure she and Getz followed in taking the written statement
from the defendant (T1 at 59-61).  Agent Clark's candidness is very
commendable and appreciated, but also leaves this Court with a
level of uncertainty in relying too heavily on her recollection of
what was said, what was not said, what was done and what did not
occur during the interview, particularly in light of the fact that
Agent Getz did not testify.

Based on the totality of circumstances, I find that a
reasonable person in Abbas's situation would (1) not have felt at
liberty to terminate the interrogation and leave and (2) would have
believed that his interrogation was being conducted pursuant to
arrest-like restraints.  Thus, <u>Miranda</u> warnings were required.  As

to Abbas's alternative argument, that the conduct of the agents during the interrogation was so coercive as to be involuntary, it is my Report and Recommendation that Abbas's motion be **denied**. I find that the conduct of the agents did not rise to the level of a "coercive and overbearing experience" sufficient to find that the statement was not voluntary under the Due Process Clause. <u>United States v. Bye</u>, 919 F.2d 6, 10 (2d Cir. 1990).


### Conclusion

For the foregoing reasons, it is my Report and Recommendation that the defendant's motion to suppress the oral and written statements made on July 12, 2001 be **granted**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: January 13 , 2006
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

      **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b) and Local Rule 72.3(a)(3).[5]

      The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.

      **SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: January **13**, 2006
Rochester, New York

_____

    [5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. §3161(h)(1)(f) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the ten days allowed for filing objections has elapsed. <u>United States v. Andress</u>, 943 F.2d 622 (6th Cir. 1991); <u>United States v. Long</u>, 900 F.2d 1270 (8th Cir. 1990).